THEODORE D. EDWARDS, Respondent, *v.* ANDREW COLLSON
et al., Appellants.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

A warranty of a steam engine as having a certain capacity for work, as
sound and in good order, and as having the ability to perform labor to the
extent of the capacity warranted, is a general warranty, and the dam-
ages allowed for its breach are merely the difference between the
actual value of the engine, and that which it would have had if as
warranted.

THIS action is brought to recover $500, and the interest on
$1,000 from February 28, 1867, the balance remaining due on
two promissory notes made by the defendants to the plaintiff,
of the date aforesaid, of $500 each ; one payable in one year
and the other in two years. There was paid on the first
note, March 31, 1868, $200, and October 7, 1868, $300.

The case was tried at the Chemung circuit in October,
1870, before Justice BALCOM and a jury. It appeared upon
the trial that the notes were given upon the sale, to the
defendants by the plaintiff and one Fox, of an engine and
boilers, and the necessary connections belonging thereto, at
the agreed price of $1,300.

The plaintiff was the owner of the boilers and Fox of the
engine, separately. It was agreed that the engine should
thereafter be put up by Fox in running order, and all the
necessary connections therefor furnished whenever requested
by the defendants. Fox claimed that this was done. The
notes were delivered to one J. B. White, to be delivered to
plaintiff by him, on an order from defendants, and when the
engine was put up in running order. On the 25th of June,
1867, Fox claimed that he had put up the engine, and per-
formed the contract in regard thereto, and was entitled to the
order on White for the notes. On that day the defendants
gave Fox the written order for the notes, and White delivered
them to the plaintiff.

The evidence as to the warranty was conflicting, and the

Edwards v. Collson.

testimony as to the alleged fraud is sufficiently stated and referred to in the opinion.

Offers of testimony were made upon the trial by the defendants, which were objected to and excluded, and exceptions taken by the defendants, which are also stated in the opinion.

The answer purported to set up two defences, although blended into one. The first was a warranty of the soundness, condition, quality and capacity of a certain engine, boilers and connections, for which the notes in question were given. In the second defence set up, it is alleged that said engine, boilers and connections had been condemned by competent persons, and that the plaintiff and one Fox bought the same with knowledge of that fact, and of the unsoundness and condition thereof. That of all and singular the matters aforesaid, or any thereof, the said plaintiff and said Fox did not inform the defendants, but concealed the same from them, and their actions and representations and statements were fraudulent, and made to deceive and defraud said defendants, and said defendants were deceived and defrauded thereby.

That the defendants relied upon the statements, representations and warranty of said plaintiff and Fox, as aforesaid, and made the payment of said money and said notes. The answer also claims to recoup the damages.

At the close of the case the plaintiff's counsel asked the court to charge the jury that there was no evidence in the case showing fraud in the sale of the engine and boilers, and the court so charged, saying: " I have not said anything about that in my charge, for I do not understand the case turns upon that. It is a mere matter of contract and warranty, and I therefore charge as the counsel requests."

To which charge and instruction, and to this part of the charge, the counsel for the defendants duly excepted.

The jury rendered a verdict for the plaintiff for $425, being $276 less than the amount due on notes. A motion was made for a new trial and denied. A judgment was entered and the defendant appealed to the General Term of the Supreme Court.

*Smith & Hill*, for the appellants.

*S. B. Tomlinson*, for the respondent.

Present—MILLER, P. J., JAMES and PARKER, JJ.

MILLER, P. J. The defendants' counsel insist that the court erred upon the trial in holding that there was no evidence in the case showing fraud, and in taking the case from the jury. The allegations in the answer, that the plaintiff and Fox, at the time of the sale, represented, stated, promised and warranted the engine and boiler, &c., as sound, &c., and the averment negativing these allegations and stating their defective character, do not set up a case of fraudulent representations, and contain no statement whatever of knowledge of their falsity. The allegations of fraud immediately follow those which set forth a warranty, and are to the effect that the engine, boiler and connections, had been condemned by well known and competent builders and inspectors, before the plaintiff and Fox became the owners, as wholly unfit for use and unsafe; that the plaintiff and Fox bought the same with knowledge of such condemnation and unfitness, and at the price of an old, worn-out, unfit and dangerous engine and boiler, and paid therefor but a small sum, about $100; that they did not inform the defendants thereof, but concealed the same from them, and their action, representations and statements were fraudulent, and made to deceive and defraud, and did deceive and defraud.

These are the only allegations of fraud contained in the answer, and, after a careful examination, I am unable to discover any direct testimony in the case that the engine and boilers had been condemned as alleged, or that the plaintiff or Fox had knowledge of the facts alleged, or that they are chargeable for any fraudulent representations whatever, in regard to the engine or boiler.

There is proof that Fox bought the engine of one Gilbert at an ax factory, which had been burned, for the sum of

Edwards *v.* Collson.

$100, but one of the defendants testifies that Fox told him at the time, that the engine was bought there and had been burnt, but was not hurt. The fact that Fox did not communicate the price at which it was purchased, of itself does not establish fraud, and as the person of whom the purchase was made was named distinctly, and inquiry could thus be made, it strongly rebuts any presumption of fraud. The inadequacy of the price paid does not establish fraud, and no unfavorable inference is to be drawn because a purchaser on the sale of property makes a good bargain.

The argument of the defendants' counsel erroneously assumes, I think, that the allegations as to the warranty aver a case of fraud, without any allegations that the representations made were fraudulent or that Fox had knowledge of their falsity. As they are mistaken in this respect, the evidence on this branch of the case cannot be considered as furnishing proof of fraud for the consideration of the jury. As to the warranty alleged, and the breach thereof, there was a conflict in the testimony; and the question whether there was a warranty, and a violation of it by the plaintiff and Fox, so as to render the plaintiff liable for damages by reason thereof, was entirely for the jury. As they rendered a verdict for a less amount than the plaintiff claimed, it must be assumed that some amount was allowed for damages. It is plain, I think, that there was no sufficient evidence of fraud for the consideration of the jury, and the judge committed no error in taking that question from them.

It is urged that the court erred in rejecting the proof offered by the defendants' counsel to show how much it was worth per thousand to cut lumber at the mill. Also what was the price per thousand for sawing for customers, and how much less the use of the mill was worth per day, in consequence of the imperfections of the engine, than it would have been had it proved to be as recommended. The evidence embraced in these different propositions is all of the same character, and its introduction involves the question, as

to what extent proof of special damages could properly be given under the circumstances presented.

There were serious objections, I think, to this mode of proving damages. The warranty alleged in the defendants' answer was not so special in its character and scope as to authorize any such testimony, and in no way similar to that class of special transactions which sanction evidence of this kind. (See *Passinger* v. *Thorburn*, 34 N. Y., 634 ; *Milburn* v. *Belloni*, 39 N. Y., 53.) In each of these cases, the warranty was specific, and made with reference to a particular purpose for which the article sold was procured, and the proof was clear that the property utterly failed to answer that purpose, being entirely of a different quality and character from the article included in the warranty.

A warranty that seed sold is of a certain kind, and that coal dust is of a certain quality and fit for a particular purpose, is different in every respect from a general warranty. And although the answer of the defendants alleged that the engine and boiler were sold for the purposes of the defendants' saw-mill, then about to be erected, and was to be placed in that mill in running order, yet the warranty stated was, that the steam engine would run a mill up to a certain horse power, and that the said engine and boiler, with their connections and appurtenances, were sound and in good order, and would perform and do a good business, and up to that capacity. This was not enough to constitute a special warranty that the boiler and engine were fitted and suited for the mill, within the principle laid down in the authorities cited. If it had been specific in this respect, then it might have presented a case where proof of the character offered would have been admissible ; but it utterly failed to come up to any such standard, and the defendants were only entitled to recoup such damages as naturally and necessarily followed as the consequences of the alleged breach, which would be the difference between the value of the engine and boiler, if they had corresponded with the warranty, and their actual value. (*Hoe* v. *Sanborn*, 36 N. Y., 98, and authorities cited.)

There was no error on the trial, and the judgment and order appealed from must be affirmed, with costs.

Judgment affirmed.