(18 App. Div. 363.)

### ROBERTSON v. CLOCKE et al.

(Supreme Court, Appellate Division, Second Department. June 22, 1897.)

ATTORNEYS—DUTIES—PERFORMANCE OF AGREEMENTS.

The owner of a parcel of land, mortgaged to one W., applied to W.'s attorney to obtain for him an extension of the mortgage, and agreed to pay him $15 for so doing. The attorney afterwards notified the mortgagor that he had the agreement of extension, and requested him to call for it, and the mortgagor replied that he would do so before a certain day. He did not call within the time set, but did go shortly after, but failed to find the attorney. Immediately after this, the attorney commenced a suit, on behalf of the mortgagee, to foreclose the mortgage. Upon being called on by the mortgagor for the extension, he refused to deliver it, unless paid certain sums in addition to his agreed fee, but offered, if so paid, to deliver it, and discontinue the foreclosure suit. *Held,* that good faith on the part of the attorney, under his employment by the mortgagor, required him to deliver the

extension, on payment of his fee; and the fact that the instrument of exten-
sion was of no validity until accepted and executed by the mortgagor was
no excuse for his failure to do so.

Appeal from special term, Westchester county.

Application of James G. Robertson for an order directing G. D. W.
Clocke and T. Emory Clocke to deliver to the petitioner an extension
of a mortgage on being paid their fees for obtaining it, or, on default,
to be punished for contempt. From an order granting the applica-
tion, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

Frank L. Young, for appellants.
Arthur M. Johnson, for respondent.

BRADLEY, J. The applicant, Robertson, had become the owner
of a parcel of land in the town and county of Westchester, subject to
a mortgage of $2,000, belonging to Ellen A. Wilkinson, and which
became due July 14, 1894. He, by his wife, paid the interest on it
for six months, and up to January 14, 1897, on the 19th day of that
month; and, by his affidavit, he states that he instructed her to ob-
tain an extension of the mortgage, and to pay the appellants for it.
Her affidavit is that, when she paid the interest, she employed those
attorneys to procure an extension of the mortgage for the period of
three years, and that T. Emory Clocke, the member of the firm with
whom the arrangement was made, promised to obtain the extension
for her husband. Afterwards Robertson received from the firm the
letter of which the following is a copy:

"New York City, March 1st, 1897.
"To Mr. James G. Robertson—Dear Sir: We have obtained the extension for
you from Mrs. Wilkinson. Kindly call Thursday, if possible; if not, as soon
thereafter as may be.
"Yours, respectfully,                    Clocke & Clocke."

This was answered by his letter, as follows:

"Williamsbridge, N. Y., March 5, 1897.
"G. D. W. Clocke, Esq.—Dear Sir: I duly received your letter regarding ex-
tension of mortgage. I shall be down at your office some time next week. I
have to wait to get in some money. Times has been dull this winter, and my
bills are not coming in for last season, but I am doing my best to get something
in to meet this.
"Yours, respectfully,                    J. G. Robertson."

In his affidavit, Robertson says that on March 17, 1897, he went to
the office of the appellants, about 9 o'clock in the forenoon, found it
closed, remained there 15 minutes, and that no one came there. It
appears that on the 22d day of that month summons and complaint
in an action to foreclose the mortgage, in which the appellants were
attorneys for Mrs. Wilkinson, the plaintiff therein, were served upon
him and his wife. The latter, by her affidavit, states that, after and
on the same day this service was made, she, by the instructions of her
husband, went to the office of those attorneys, asked for the instru-
ment of extension of the mortgage, and offered to pay them $15, their
fees, for it; that they then informed her that their fees for obtaining

it were $15; that they had the extension in their possession, but that they refused to deliver it to her; and that the member of the firm with whom she had this interview said it would have been all right, and there would have been no trouble, if her husband had paid him the eighty-three dollars and some cents which G. D. W. Clocke had paid out in settling the judgments against the property, that he was taking his present course for revenge, that now the only way in which the matter could be settled would be for her husband to pay the $15 for the extension, this bill for $83, the costs of the foreclosure action, less the sum of $20. As the result, following this, of an interview had by Robertson with his attorney, the managing clerk of the latter called upon the appellants on March 27th, and by his affidavit he says that he offered them the $15, and demanded the extension, which was refused, but was informed that, if Robertson would agree to pay the bill of $83.33, the $15, and $33.65 of the costs of the foreclosure action, they would discontinue the action, and deliver to him the extension of the mortgage, and that Mrs. Wilkinson was their client, "trusted them, and would do whatever they said."

Upon those facts, treating them as true, good faith on the part of the appellants required them to deliver the instrument to Robertson. It thus appears that they were employed by him to obtain it, and that he assumed the liability to pay them for their services in doing so. While it is true that the instrument was executed by Mrs. Wilkinson only, and that, as her ex parte agreement would not be effectual in law as an extension for want of consideration, it may be assumed that Robertson was ready to make the stipulation mutual by also executing it, and that the appellants procured it, and Mrs. Wilkinson executed it on her part, to consummate the purpose imported by its terms, and that, acting for the parties, it cannot, with credit to the attorneys, be supposed that they would have failed to properly advise them with that view. We are not informed what were the precise terms of the instrument, further than it was one for an extension for three years of the time of payment of the principal sum of the mortgage; but we think that an instrument of that nature, executed by the parties, could contain such mutual stipulations as to render it effectual as one extending the time of payment. Olmstead v. Latimer, 9 App. Div. 163, 169, 41 N. Y. Supp. 44. This, however, did not concern the appellants, further than pertained to their professional duty advisory to the parties on the subject to which the instrument they prepared related. It does not appear that they expressed to Robertson the view that it was not legally effectual, or gave any such reason for their refusal to deliver it to him. But the appellants do not permit the controversy to rest upon the affidavits of the moving party in the matter, and, if the facts stated in the affidavits in opposition to the motion had been adopted by the special term, it would not have been granted. The question is whether the court is concluded by any controlling facts established in opposition to the motion. By their affidavits, Mrs. Wilkinson and the appellants state that she had given them general instructions to procure agreements of extension of all of her mortgages which had matured (of which the mortgage in question was one). The appellant to whom the interest was paid by Mrs Robertson, in Janu-

ary, 1897, states in his affidavit that he then informed her of such in-struction; that Mrs. Robertson said that her husband would accept the condition, and execute the paper; and that, pursuant to the under-standing that the deponent would write her husband when Mrs. Wilkinson signed the paper, they did send the letter of date March 1, and received from him that of March 5, 1897. And Mrs. Wilkinson and the appellants depose, by their affidavits, that she, having exe-cuted in duplicate the instrument of extension, and directed the ap-pellants to procure the execution of it by Robertson, was afterwards informed by them of the correspondence, and his failure to call and execute it, as he had by his letter indicated he would; and that there-upon she directed them to cancel her signature to the paper, and to commence an action to foreclose the mortgage, and for that purpose the complaint was verified by her. The intervention by Mrs. Wilkin-son, resulting in the commencement of the action to foreclose the mortgage, is established by the fact which clearly appears, that she verified the complaint; and therefore it must be assumed that the action was commenced by her direction or consent. The instrument of extension had not then been executed by Robertson, nor did he go to the office of the appellants to take and sign it within the time which he, by his letter of March 5th, suggested he would do. And although it may be that the extension paper executed by Mrs. Wilkinson had no legal force, as such, at the time the action was commenced, Robertson was entitled to it on payment of the fees of the lawyers for preparing and obtaining it, if, as the affidavits on his part tend to show, it was done by them solely upon his employment and for him. In that view, the reason which Mrs. Wilkinson may have had to commence the action was no excuse for the refusal of the appellants to deliver the instrument to Robertson, as it would be deemed held for him, and not subject to her control or direction, although the appellants may have been her attorneys and counsel for such purposes as she should require professional services and advice. The statements in their affidavits constitute an implied denial that they acted as Robertson's attorneys or upon his employment, and were only pursuing the instructions of Mrs. Wilkinson in what they did, by way of providing for such exten-sion, and are in conflict with the import of the statements in one of the affidavits upon which the motion was made. Notwithstanding the appellants do not acquiesce in some of the other facts stated in the moving affidavits, the circumstances indicate a purpose on their part to realize from Robertson what they were not fairly entitled to, as a condition of delivering to him the instrument of extension.

We are not disposed, on this review, to disagree with the conclusion of the special term upon the questions of fact presented for considera-tion, as the motion was entertained by and submitted to the court without objection, for determination upon the merits. Tyler v. Hil-dreth, 77 Hun, 580, 28 N. Y. Supp. 1042. The relation between the appellants and Robertson, in respect to the transaction of obtaining and taking the instrument of extension, may be treated as that of at-torneys and client; and therefore the conduct of the former properly became the subject for consideration by the court of which they were officers; and the punishment to which they might be subjected for

refusal to obey its order is not dependent upon the provisions of section 2281 or other sections of the Code of Civil Procedure. "It rests upon the relation of the attorney to the court as its officer, and the general control always exercised, founded upon that relation." In re H———, 87 N. Y. 521.

The order should be affirmed. All concur.